

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 22, 2022

**BY ECF**
The Honorable John P. Cronan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Manuel Peralta*, 22 Cr. 150 (JPC)

Dear Judge Cronan:

      The Government respectfully submits this letter in opposition to defendant Manuel Peralta's March 22, 2022 bail application. (Dkt. 28).

## Background

      Since approximately May 2020, law enforcement officers have been investigating a drug trafficking organization (the "DTO") that operates in the vicinity of Belmont Avenue and East Tremont Avenue in the Bronx. The DTO sells cocaine, cocaine base, and what it markets as heroin (the "dope" sold by the DTO often contains fentanyl). During the course of controlled purchases by law enforcement, members of the DTO have sold approximately 53 grams of fentanyl and approximately 48 grams of cocaine base.

      The defendant has been involved with the DTO's activities since at least in or about September 2021, when law enforcement officers first began making controlled purchases from the defendant. During the course of the investigation, law enforcement engaged the defendant in at least four controlled purchases, buying from the defendant alone nearly ten grams of fentanyl, as well as nearly two grams of cocaine base.

      On March 8, 2022, the defendant was charged by indictment with two counts: (i) conspiracy to distribute and possess with intent to distribute 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B); and (ii) conspiracy to distribute and possess with intent to distribute 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). (Dkt. 2).

      On March 14, 2022, the defendant was arrested in the vicinity of his residential building. When law enforcement officers announced their presence, the defendant took off running, tossing some objects into the grass as he fled. When the officers eventually cornered the defendant and placed him under arrest, they recovered from his person a baggie containing approximately 51

March 22, 2022
Page 2

barrels of suspected cocaine base. The officers also recovered the objects that the defendant had attempted to discard as he ran: Two bundles (or approximately twenty glassines) of suspected heroin, stamped with the same stamp that appeared on suspected heroin in the possession of all of the members of the DTO that were arrested that day.

On March 15, 2022, the defendant appeared for an initial appearance before the Honorable Robert W. Lehrburger, where the defendant consented to detention without prejudice to a future bail application.

On March 22, 2022, the defendant appeared for a pretrial conference and was arraigned. Later that day, the defendant made the instant bail application. (Dkt. 28).

**Discussion**

Under Title 18, United States Code, Section 3142(e)(3)(A), "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the [defendant] committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." Here, a Grand Jury return an indictment charging the defendant with violations of Title 21, United States Code, Sections 846 and 841(b)(1)(B), which has a maximum term of imprisonment of 40 years (Dkt. 2). Accordingly, there is a presumption that no bail conditions will suffice. The defendant cannot rebut that presumption here.

Title 18, United States Code, Section 3142(g) sets forth the factors that the Court should "take into account" "in determining whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." Here, all of those factors counsel for detention.

First, "the nature and circumstances of the offense charged" confirm that the defendant is a danger to the community and a risk of flight. 18 U.S.C. § 3142(g)(1). As to danger, the conspiracy in which the defendant participated involved more than 50 grams of fentanyl and more than 40 grams of cocaine base. The defendant and his co-conspirators distributed significant quantities of dangerous drugs, including fentanyl, which is lethal in even the smallest quantities, and which is tearing through our community. The nature and circumstances of the offense charged demonstrate that the defendant is a risk of flight as well. The charged offense carries a mandatory minimum term of imprisonment of five years, *see* 21 U.S.C. § 841(b)(1)(B), and a rough calculation of the defendant's Guidelines range is 60 to 63 months' imprisonment. That gives the defendant strong incentive to flee.

Second, "the weight of the evidence against the [defendant]" also provides him significant motivation to flee. 18 U.S.C. § 3142(g)(2). Here, the evidence against the defendant is strong. Many of the controlled purchases from the DTO, including many of the controlled purchases from the defendant, were audio and video recorded; the New York City Police Department Laboratory confirmed that the defendant and his codefendants were selling fentanyl and cocaine base; and the circumstances of many of the controlled purchases, as well as statements made during those

March 22, 2022
Page 3

controlled purchases, including by the defendant, leave no doubt that the defendant was working in a conspiracy to distribute narcotics:  During one of the recorded controlled buys, for example, the defendant and his twin brother, codefendant Daniel Peralta, stood next to one another and each contributed narcotics to the deal.

Third, "the history and characteristics of the [defendant]" confirm that there are no "conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community."  18 U.S.C. § 3142(g)(3).  The defendant has had previous encounters with law enforcement.  According to the Pretrial Services Report, in 2015, the defendant was adjudicated a juvenile delinquent for grand larceny in the fourth degree, taking property from the person of another, in violation of New York Penal Law Section 155.30(5), and was sentenced to 13 months' probation.  Then, in 2018, the defendant was arrested on the charge of assault in the third degree, with intent to cause physical injury, in violation of New York Penal Law Section 120.00(1).  The defendant's rap sheet does not reflect what, if anything, became of that arrest.  Thereafter, on March 5, 2022, the defendant was arrested after driving wildly around the New York City streets.  Body camera footage of that arrest shows the defendant admit to the arresting officer, in substance and in part, that the defendant previously had been smoking marijuana, was driving crazy while blasting music, and did not realize that he had led NYPD officers on a bit of a car chase around the Bronx.  The car that the defendant was driving that day had a fake temporary Texas license plate.  The following day, on March 6, 2022, the defendant was convicted of driving without being duly licensed, in violation of New York Vehicle and Traffic Law Section 509(1), in satisfaction of the other offenses on which the defendant had been arraigned—namely, possession of a forged instrument in the third degree, in violation of New York Penal Law Section 170.20, and reckless driving, in violation of New York Vehicle and Traffic Law Section 1212.  That day, the defendant was sentenced to pay a fine.  Those prior interactions with law enforcement, however, did nothing to abate the defendant's participation in conduct that demonstrates that he poses a risk of flight and a danger to the community:  Just eight days after being sentenced to that fine, the defendant was fleeing from law enforcement with approximately 51 barrels of suspected crack on his person and was attempting to hide evidence— namely, approximately twenty glassines of suspected heroin.

Fourth, "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant]'s release."  18 U.S.C. § 3142(g)(4).  That danger should be clear from what has been said above:  The defendant worked with others to participate in the distribution of significant quantities of fentanyl and cocaine base.

March 22, 2022
Page 4

      For the foregoing reasons, no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. His bail application should be denied.

                                                              Respectfully submitted,

                                                              DAMIAN WILLIAMS
                                                              United States Attorney for the
                                                               Southern District of New York

                                       By:   */s/ Samuel P. Rothschild*
                                                              Brandon D. Harper
                                                              Samuel P. Rothschild
                                                              Assistant United States Attorneys
                                                              (212) 637-2209 / -2504

cc (by ECF):       Michael Hueston, Esq.